Good morning, honors. My name is Jeffrey Renz. I'm, as a member of the Bar of the Ninth Circuit, it's my duty and it's also my privilege to introduce Erica Griffith, a third-year law student at the University of Montana School of Law. And she will present the argument today. Thank you, Jeff. Welcome. Thank you. May it please the court. My name is Erica Griffith. And I'm here on behalf of Ernest Cassell Woods, II, plaintiff and appellant. Several portions of this case were dismissed because Mr. Woods did not know what he was doing. I would like to start with the dismissal of Warden Carey by summary judgment. There is evidence in the record that there were issues of material fact as to Warden Carey's involvement in this case. Those issues were not before the trial court. If the district court would have appointed counsel in this case or a proper RAND notice would have been issued, those issues would have been presented to the court in the proper manner. And Mr. Woods would not have suffered prejudice in this case. This case is full of superfluous filings. It started as a writ of habeas corpus in June of 2004. Mr. Woods then filed a motion to amend the writ of habeas corpus and a request for injunctive and declaratory relief before the district court judge could respond that it would be construed as a 1983 action. Mr. Woods filed six requests for injunctive and declaratory relief, 14 motions for counsel, seven motions to reconsider, including a motion to reconsider a motion to reconsider, which was fully briefed. There were at least 97 documents on the docket that would not have been filed if the court would have requested counsel under 28 USC 1915E in this case. The district court could have requested an attorney represent Mr. Woods in this case. The judge could have picked up the phone and asked that counsel be appointed. General William Souter, clerk of the US Supreme Court, visited our law school last week. And during this visit, he made a quote that I thought was really striking. In reference to the Supreme Court's practice of asking attorneys to appear on behalf of a party, he said, and I quote, if you can do something and the court asks you to do something, you do it. You are not just a member of the bar. You are an officer of the court. But the call was not made. If the call had been made, it would have reduced the cost of litigation, reduced the burden on the district court, reduced the number of superfluous filings that the defendant had to respond to those filings, and Warden Carey would not have been dismissed simply because Mr. Woods did not know what he was doing. The problem with that is there's a tremendous number of prisoner cases that are filed in the district court, many of them, most of which are without any merit. And to appoint counsel in all those cases would be a tremendous burden on the courts and the bar. I can see that your argument's right in a case where there is some merit to it. But what rule would you suggest for it? I mean, the law in the Circuit on Appointment is not very favorable. How would you suggest we change the rule so that we would know what type of case counsel should be appointed in? Your Honor, I believe that the discretion of the district court is important. And the merits of this case clearly show that it was a meritorious case. And I believe that the district court should use its discretion when it's requesting counsel in a case. For example, it was very early on in this case, as I pointed out, that Mr. Woods did not know what he was doing. Well, isn't that true for most of the pro se prisoner litigants? It is true. And the merits get flushed out later on. I mean, the district court, with all due respect, is not going to know at the outset whether or not the case is meritorious. And there are hundreds, if not thousands, of these types of cases. So I appreciate your argument. But it's still, I think, the standards for exceptional circumstances. And I don't know if you can identify what the exceptional circumstances would have been at the early stage. Well, the court decided this was a meritorious case under 1915a. And Mr. Woods demonstrated that the complexity of the legal issues involved under Wilborn, I think, are pretty established in that Warden Carey was dismissed on summary judgment. The complexity of the case, if you step back a minute, and it's sort of a run-of-the-mill case where the prisoner didn't receive medical treatment in a comparatively minor way. It had to do with a tooth. And I don't know that prisoners can try even the least complex cases. But it's hard to see where the treatment of a tooth is one of the more complex cases. Well, Mr. Woods faced several obstacles during the course of this case. And he was denied access to the law library on several occasions. He was transferred among prison housing units. He was transferred among prisons. He was denied access to his legal paperwork. He was denied the ability to represent himself as a prisoner even should be able to represent himself. Well, I think if I were the district judge, I would rather have appointed counsel and not had all the filings that we got from Mr. Woods. It would have been to the benefit of the district court. I believe it would have greatly reduced the burden on the district court. I agree with you, Your Honor. Let me ask you about the notice, the written notice. I know that the notice provided by the court is the word may. And I think that's the point of the issue here on appeal. But it also said that he must show proof of his or her claims at, I think it was towards the end. So I guess, why was Mr. Woods then not on notice of his obligation under Rule 56 if it did say must? I believe the Wran notice was deficient for two reasons. The first being that you referred to is that the language is confusing. And it doesn't state that he must set out. And it states that he may set out the specific declarations, depositions, answers to interrogatories, which would lead to confusion. For example, Mr. Woods, how he responded to the motion of summary judgment was he filed an opposition and a request for injunctive relief. And attached, he filed an article about mail tampering, an unauthenticated letter regarding mail service, a notice about library use, a library schedule, and a letter stating that Ms. Marquez's office had received documents in error. His response lacked exactly what the Wran notice was meant to inform him of. So I think that you can conclude that he was prejudiced by not receiving the proper Wran notice that used the confusing, not mandatory language. Assume we agree with you that the Wran notice was inadequate. I'm curious, how would remanding anything, remanding change anything that occurred here? I mean, what facts would allow Mr. Woods to prevail? I think that the, sorry, the prisoner declarations that were attached later to later documents that showed an issue regarding Warden Carey's knowledge of the difficulties in the 602 appeal process and the knowledge that there were medical issues going on in the prison, that prisoners were not receiving medical care, would lead to a greater problem within the prison and Warden Carey's knowledge of such. I also believe that the Wran, oh, is the 10 minutes here and including the rebuttal? Thank you, Your Honor. If there are any more questions, I would like to reserve the remainder of my time for reply and rebuttal. Thank you. Thank you. Good morning. May it please the Court, my name is Jennifer Marquez and I represent Mr. Santos Cervantes and Mr. Carey. I would actually just like to use 5 minutes to respond to Mr. Woods' appeal. Oh, okay, so this is my argument now? So I'm using my 10 minutes, I apologize. This, your time now is only related to the first appeal, not to the cross appeal. Okay, and I only wanted to use 5 minutes. You can have only 5 minutes. In fact, you can take 1 minute, we'd be just as happy. That's probably true. I just wanted to first address the appointment of counsel. As you know, it's an abuse of discretion standard. There were no exceptional circumstances under this case. It wasn't a complex issue. In fact, Mr. Woods prevailed at trial, so I don't think in this case there's any need to look back at the... No, the true beneficiary would have been the district judge. Excuse me? The true beneficiary would have been the district judge. That's true. Secondly, in terms of the Rann and Wyatt notice, the district court gave sufficient Rann and Wyatt notice. They reminded the plaintiff again in the second scheduling order... When was the second scheduling order? The second the scheduling order was about 3 or 4 or 5 months before the motions for summary judgment was filed. And the scheduling... The first warning was how many? Was it a year or two years? I believe it was within a year. And then the second... That applies also to the motion to dismiss. Correct. It applied to both the Rann... The motion to dismiss was even after the motion for summary judgment. Correct. Because during the pendency of the motion for summary judgment, Govey-Woodford, the case precedent by the Supreme Court, was decided. And at that time, while the motion for summary judgment was pending, I requested from the district court permission to file regarding the exhaustion issue. You didn't file any notice, did you, a Rann notice along with your motion for summary judgment? No, I do not believe I did. In the other circuits, they make it pretty clear that the defendant will file that notice with the motion so that the prisoner will, when he gets the motion for summary judgment, will be told how you deal with it, so he won't file 77 answers. Correct. You mean in other circuits than the Ninth Circuit? Yes. I'm not aware if the other circuits... Well, it's a good idea to be aware of other circuits as well as the Ninth Circuit. Yes. Yes, Your Honor. Not only that. I mean, we can learn from the other circuits as a matter of policy that, whether it's binding or not, that that's the way to make sure that a prisoner is informed adequately. And if you could just respond to her. Does a year before the motion for summary judgment, the notice being given a year, does that really give fair notice? I mean, can you respond to that? Well, I believe it does. And also, because of the fact in this case, the district coordinate scheduling order reminded the parties as to what the requirements were. They referenced a prior order about what the requirements are to oppose both a motion for summary judgment and a motion. Did they repeat the same language as in the Wran notice? Or did they talk about the language? Or did they just say, consult the Wran notice that we gave you a year ago or five months ago? They referred to the prior order. They didn't repeat the language. Okay. And so the language was the same? Correct. And there's an argument that the language was kind of confusing. I don't think it was confusing. It let the prisoner know all the different ways that he can oppose both motions. There's no mandatory requirement in the Ninth Circuit that the language must be must. In all my experience in the Eastern District Court, that's the typical notice that is given in all types of prisoner cases in the seven years that I've been practicing in the Eastern District Court. So to me, it would be surprising if after all these years, the Eastern District is using the same type of notice in all these cases, that just because appellant would like it to say must versus may, I mean, you were correct in that at the end it did say that he must show proof of his claims. But the district court's notice was sufficient. It provided him the various different ways that he can oppose both a motion for summary judgment and both motion for failure to exhaust. And as to their argument about the prisoner declarations, the prisoner declarations were just generally complaining about the grievance process at the prison. There was maybe one declaration that was somewhat specific about naming Mr. Cervantes, but other than that, they were just general declarations. Complaining about the grievance process. So I don't see how those declarations would support any claim in this case. And at this time, I'd like to reserve the remainder of my time. No, there's no reserving the remainder of this time. Okay. Well, there's five minutes is up. Yes. On this appeal, you're the appellee. Correct. So this is it for this appeal. Thank you, Your Honor. Okay. We'll give you two minutes for rebuttal. Thank you. First, the scheduling order. It simply referred to the RAND notice, which in the scheduling order, it said, please refer to that order. The RAND notice itself wasn't addressed in the scheduling order. I would just like to clear that up. The RAND notice was issued a year prior to the motion for summary judgment. And right prior to the first motion that Mr. Woods filed after the motion for summary judgment was a notice that he had been transferred among housing and all of his property had been packed up and by prison officials and had been rifled through, and the RAND I would also like to address how a timely RAND notice that would have used the required language would have made a difference is also it would have had the declarations of the prisoner, it could have had other details, would have been filed with his objection to the motion for summary judgment, as well as the carry letter. Your Honor, Murguia, in your case in Bailey in 2008 in the District Court of Arizona, you filed a RAND notice after the motion for summary judgment. And in your RAND notice, you set out specific language that was not as dismissive as this RAND notice used. It set out specifically that you must file affidavits and the authenticating documents that are required. I appreciate you highlighting that. Let me just ask you because a colleague over here said that this has been the notice that's been used in the Eastern District of California, and I know that each district has their own culture about things and how they interpret the law and what's been used. Why, if this has been sufficient for the whole time, I guess that Mr. Montes has been practicing, is this now deficient? I'm sorry, I don't understand what the question is. I guess this has been the notice that's been used, and I guess it's never been a problem before. Well, we don't know that it hasn't been a problem. I believe that the RAND notice is specifically meant to allow pro se prisoner litigants access to the courts and not have their meritorious claims dismissed on summary judgment. And a clear RAND notice issued after a motion for summary judgment would ensure that they are aware what documents need to be filed. Thank you. Thank you. Thank you, Your Honor. Thank you. All right. You have a total of five minutes. You can save whatever portion of the five you want for rebuttal. Thank you, Your Honor. At this time, I do not wish to take any further questions. The first day of trial in this case, the trial judge with his head in his hand bemoaned that in his 30 years as a federal court judge, he had never had this happen before. The pretrial and trial order based this case on an Eighth Amendment issue, but the trial court recognized that this case was strictly a due process claim because Mr. Woods was suing the person who had reviewed his 602 appeal. The trial court then vacated the trial and sent everyone home because this case could not be tried on a due process claim. I left the courthouse only about an hour later to get a phone call from the court clerk telling me that the trial was actually going to go forward and I should report back to the courthouse. Minutes before the trial commenced, when I asked for clarification as to what the issue would be at trial, the trial court read a supervisor liability instruction. Despite my objection, the jury was brought in. That was how the trial began, and it only went downhill from there because my client, Mr. Cervantes, was found personally responsible for compensatory and punitive damages because he was doing his job according to the rules outlined by the California Code of Regulations when he screened out Mr. Woods' 602 appeal as untimely. I do not represent the dental staff, and I'm not here to defend the delivery of dental care at Solano State Prison back in 2002. I'm here today because Mr. Cervantes, an appeals coordinator, was held personally responsible for screening out an appeal according to the California Code of Regulations. Because of the facts of this case, Mr. Cervantes is entitled to qualified immunity. Looking at the clearly established prong of the qualified immunity test, in 2003 the case law was not clearly established as to whether an appeals coordinator could be held liable under Section 1983 for screening out or reviewing a 602 appeal. In fact, the only cases that address the actions of an appeals coordinator in reviewing a 602 appeal did so in the context of the due process clause. Since 2003, there are hundreds of cases in the district courts in this circuit that have addressed this issue. Those cases have determined that as a matter of law, when the reviewer's only involvement is reviewing or denying an inmate's appeal, there's no liability under 1983. I'm not advocating here today that a reviewer could never be held liable under Section 1983, and I don't think you need to make such a broad rule of law here today, because under the facts of this case, Mr. Cervantes was making a purely administrative decision, as he is required to do under the California Code of Regulations. Mr. Cervantes was not making any determinations regarding the underlying constitutional issue regarding dental care. He is not a dentist or a chief medical or dental officer who has the knowledge regarding the dental care issue, who has the authority to order dental care, and who has control over the dental care. He doesn't know enough to know whether to screen out a case or not. Is that a defense, that he's given a job that he's not competent to perform? Well, no. He's merely he is just merely doing a procedural administrative function when he gets an appeal. He's reviewing it to see if it complies with the California Code of Regulations. I'm merely distinguishing it from a case where maybe a second-level reviewer is looking at the appeal and has the authority, control, and knowledge over the requested relief to grant. It's not on the merits. It's a purely procedural? Correct. And what was the basis of his decision? He screened it out because the appeal was untimely, according to the California Code of Regulations, Section 3084.6, I believe, because it hadn't been filed within the event or decision had not been filed within the 15 working days. And was that correct? Yes. I sound dubious. No, no, no.  I mean, I recognize that in this case the issue is that he had put his name on the dental waiting list. He had then actually seen a dentist because he broke his tooth. Initially, he wanted to see the dentist for a broken partial or denture. But in the meantime, he broke his tooth and he was seen by the dentist. The dental department made the decision to then take him off the dental wait list. And so the subject matter of his 602 appeal was that he was taken off the dental wait list. But Mr. Wood's claim here is an Eighth Amendment deliberate indifference claim, isn't it? At trial, that was one of the issues. The second issue was supervisor liability. Right. So you're not ‑‑ I mean, is Hunt v. Dental Department, I mean, is he making any determinations about any of the underlying? Well, how is this distinguishable from Hunt, then? Well, under the facts of this case, he was just ‑‑ Was he Mr. Cervantes? Yes.  And there's no established case law that says that a reviewer under those limited circumstances can be held liable under Section 1983. He's not looking at the underlining constitutional violation when he was reviewing his appeal. You know, under the constitutional violation prong of the qualified immunity test, the question would be would a reasonable appeals coordinator under the circumstances have known that screening out a 602 appeal violated Mr. Wood's dental right? And the answer would be no, because it didn't prevent him from obtaining dental care when he screened it out. At the informal level, the appeal stated that Wood's had already seen the dentist and told him if he still needed to see a dentist, then he should submit a request with the dental department. At the informal level, the dental department noted that Mr. Wood's appeal had been partially granted. So he hadn't ‑‑ he had seen a dentist. He wasn't being denied dental care. Additionally, the appeal didn't say that he was in pain at the time he submitted his appeal. He wanted to see a dentist for a broken partial or denture, which the dental department considered non‑emergent and routine dental care. Finally, Mr. Wood's appeal showed that he knew how to obtain immediate dental care if it were an emergency. In his appeal, he stated that the year before, when he broke his tooth and was in pain, he told a correctional officer who contacted the dentist and he was seen. Wood's testified at trial that he knew if he needed to be seen because he was having a dental emergency, he could request to be seen by the dental department by asking a correctional officer, work supervisor, court counselor, or other staff. So screening out Mr. Wood's 602 appeal did not prevent him from obtaining dental care. Mr. Cervantes' conduct did not cause a constitutional violation because determining compliance with the California Code of Regulations does not cause a constitutional violation. So under the constitutional violation ‑‑ he was aware that it was a serious medical need and that the need reflected a constitutional right to treatment and that his act of screening out the appeal would inhibit his ability to use the process to obtain medical care? That is correct. He did testify to that. And that is a problem that I have with this case going forward. It's really a due process issue. Of course, when he's sitting there reviewing the 602 appeal and the subject matter is dental care, the mere screening it out can't violate that right. The subject matter of the appeal showed that he had already seen a dentist, had already advised him how to obtain dental care, so there's no constitutional violation when he was merely screening it out for an administrative procedural requirement that he's required to do as an appeals coordinator according to the California Code of Regulations. Do you think this is the kind of complex case where counsel should have been appointed? I mean, I'm having problems. Yes. Understanding how the law applies to this. Do you think the prisoner is capable of ‑‑ even the judge, you say, gave the wrong constitutional ‑‑ made it the wrong constitutional issue. Well, I think that ‑‑ Do you think that Mr. Woods is perfectly capable of handling this case? He prevailed at trial. Against one of the defendants. Correct. And you said that he prevailed at trial. It was wrong because he didn't know the right issue. Well, you mean Mr. Woods didn't know the right issue? Well, if the judge didn't, I assume Mr. Woods didn't either. Well ‑‑ And he didn't understand about why he was suing the wrong person. I think the confusion is that, because this is really a due process case, you have an individual who's just screening out an appeal. I mean, I don't think that this case should have gone forward. But with that said, I mean, Mr. Woods did, if you ‑‑ I read the trial transcript again recently. He did a great job at trial with bringing up all these different California code of regulations. Wrong constitutional theory. Excuse me? Yeah, the wrong constitutional theory. The wrong constitutional theory? Yes. It was the wrong claim. You mean the supervisor liability claim or ‑‑ The due process or the Eighth Amendment or whatever it was you think it should have been the other. Well, I just believe that under this case, it was a ‑‑ it was strictly a due process claim. That doesn't mean that he had any other viable claim. It was a due process claim. I guess I don't understand your question in that regard, that he could have had another viable claim, that he sued under the wrong theory. I thought you were saying it should have been an Eighth Amendment claim or it wasn't. I thought you were saying the theory that it was tried under was the wrong constitutional theory. Correct. But that was the district court's determination when they brought me back later that afternoon that it was going to go forward. I don't think that it was any reflection upon the inmate. No. It's a reflection on the district court. What was the theory that they wrongly tried it on? Supervisor liability, for one, because there was absolutely no evidence that Mr. Cervantes ‑‑ Did you object to that? Yes. I objected before the trial began and I objected during trial to instructing the jury on a supervisor liability claim for an appeals coordinator when there was absolutely no evidence that he was a supervisor. He testified he didn't even supervise the office assistant. There was clearly no evidence. So giving the instruction as to supervisor liability and an Eighth Amendment when there was a general verdict, we have no way of knowing how the jury actually ‑‑ which theory of liability the jury determined liability under. Well, can't we apply the test under Trevor v. Massieri, I mean, to determine whether that's true or not? Well, I think applying the Trevor factors shows that the jury would have been confused and requires reversal. Will Mr. Cervantes pay this judgment personally? Excuse me? Will Mr. Cervantes pay this judgment or will he be reimbursed? He will be liable for the punitive damages. For both the compensatory and punitive? I believe the department would pay the compensatory but not the punitives. As to the Trevor factors ‑‑ Is that an inferior in fact? That's in fact, Your Honor. That's why I feel that this case has an unjust result for an appeals coordinator whose job it is to review 602 appeals. And he's in an office, he's reviewing 100 appeals a day, and in this case, he shouldn't be held personally responsible for punitive damages and have to pay $1,000. I mean, that's just not the right result in this case. Turning to the Trevor factors, under the fourth factor, the extent to which the same disputed issues of fact apply to the various legal theories. I mean, you have a supervisor liability theory and an individual conduct. A deliberate indifference theory against Mr. Cervantes is about his own individual conduct. Those are not two identical theories that have the same disputed issues. One would be that as a supervisor, he's not ‑‑ there's no facts that show that he supervised anybody. Under the deliberate indifference theory, it's his own individual conduct. So I don't think there are same disputed issues of fact that would apply to both theories. As to the second factor, are there identical defenses? No. As to his individual conduct, it would be that he was doing his job according to the California Code of Regulations. As to the supervisor liability theory, it would be that he's not a supervisor. So those are two different defenses. There's no identical defenses for those theories. As to the first factor, the potential for confusion, confusion would be that by giving the supervisor liability instruction that the jury thought he had control over the dental staff. And therefore, the mere conduct of screening out the appeal denied Mr. Woods dental care, and that's not the law. That's a due process claim. The third factor, the strength of the evidence, the fact that Mr. Cervantes was aware of Woods' dental needs and understood Woods had a constitutional right to dental care does not by itself establish deliberate indifference. It's a due process issue. In conclusion, in conclusion, under the facts of this case, an appeals coordinator should not be held personally responsible for compensatory and punitive damages. Mr. Cervantes is requesting that this Court determine that he's entitled to qualified   Mr. Cervantes requests reversal of the general verdict based on instructional error. Thank you, counsel. Thank you. Mr. Cervantes is not entitled to qualified immunity under any arguments he has made because, based upon Mr. Cervantes' own admissions at trial, he testified that he understood that Mr. Woods had a serious dental need. He testified that he understood that Mr. Woods was seeking care. He testified that he understood that Mr. Woods had a constitutional right to dental care. He testified that he understood that screening the appeal would inhibit Mr. Woods' ability to receive dental care. There is substantial evidence that even though Mr. Woods understood all these things, that he denied Mr. Woods' appeal anyways. He was deliberately indifferent to Mr. Woods' serious medical needs. Now, as I understand it, he disqualified Mr. Woods because of the timeliness of the application of the grievance. The denial of the application of the grievance on timeliness is arbitrary because Mr. Woods' test or Mr. Cervantes testified at trial that an inmate has 15 days from discovery that he was adversely affected by an action or decision or policy. Mr. Woods didn't find out he was removed wrongly from the dental treatment list until he received the 602 back that said he was removed from the dental treatment list until he received the medical list. And he filed the appeal within 15 days of finding that out. Was that information available to Mr. Cervantes? I'm sorry, what? Was that information on Mr. Woods' form so that Mr. Cervantes was aware of that? It was on the 602, yes. How about the supervisor liability issue in the jury instruction? Cervantes failed to object to the verdict form. In fact, he proposed the general verdict form, so he could have and he should have attempted to correct the verdict form if he felt he would be prejudiced by the language, but he did not. I believe the district court was correct when they denied Mr. Woods' due process claim, because this is not a due process claim. This is a denial of medical care, of a serious need. And the U.S. magistrate judge, the U.S. district court judge, and the jury all heard these arguments, and they found unanimously for Mr. Woods. This case is similar to a guard that received the 602 requesting dental care and threw the 602 away instead of sending it, submitting it to the dental office. Mr. Woods denied, or sorry, Mr. Cervantes denied Mr. Woods' dental care, and he testified to such that he did it knowingly and deliberately at trial. And that is why we would like you to affirm the jury verdict as to Mr. Cervantes, affirm the denial of the Rule 50 motion, reverse the dismissal of the broken tooth claim, and reverse dismissal of Warden Carey. Are there any more questions? No, thank you. Thank you for your time. The case just argued will be submitted.
judges: Reinhardt, Noonan, Murguia